# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO
# SENIOR JUDGE MARCIA S. KRIEGER

Civil Action No. 19-cv-00284-MSK-STV

**ROLANDO VEGA, individually and on behalf of others similarly situated,**

    Plaintiff,

v.

**CRAFTWORKS RESTAURANTS & BREWERIES GROUP, INC.,**

    Defendant.

## OPINION AND ORDER DENYING MOTION TO DISMISS OR TO TRANSFER

**THIS MATTER** comes before the Court pursuant to the Defendant's ("Craftworks") Motion to Dismiss for Lack of Jurisdiction or to Transfer Venue **(# 22)**, Mr. Vega's response **(# 26)**, and Craftworks' reply **(# 30)**.

## FACTS

According to Mr. Vega's Complaint **(# 1)**, Mr. Vega was employed as an Assistant Manager at Craftworks' Gordon Biersch Brewery ("GBB") restaurant located in New Orleans, Louisiana. Craftworks classified GBB Assistant Managers as executive employees, exempt from the Fair Labor Standards Act's ("FLSA") overtime requirements. However, Mr. Vega alleges that, due to inadequate labor budgeting, Craftworks forced Assistant Managers at the New Orleans GBB – and indeed, at other GBB locations as well – to routinely perform non-exempt duties, such that their "primary duty" was no longer managerial. As a result, Mr. Vega alleges that Craftworks forfeited any FLSA exemption that might apply to Assistant Managers at GBB and that Craftworks was therefore obligated to pay them overtime wages as required by the

1

FLSA. Mr. Vega brings a single claim for violation of the FLSA's overtime requirements, 29 U.S.C. § 207. Moreover, Mr. Vega requests to bring his claim as a collective action under 29 U.S.C. § 216(b), allowing all GBB Assistant Managers (or others bearing similar job titles or job duties) to opt into this action as co-plaintiffs.

Craftworks moves **(# 22)** to: (i) dismiss Mr. Vega's suit for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), on the grounds that Craftworks does not have a sufficient jurisdictional presence in Colorado; (ii) to dismiss Mr. Vega's claim for improper venue under Rule 12(b)(3) and 28 U.S.C. § 1391, in that Colorado is not a statutorily-approved venue for a suit involving these parties and allegations; and (iii) if the Court is not otherwise inclined to dismiss Mr. Vega's claims, to transfer this action to the Eastern District of Louisiana for the convenience of parties and the ease of access to evidence.

## ANALYSIS

### A. Personal Jurisdiction

The party asserting the existence of personal jurisdiction – here, Mr. Vega – has the burden of establishing its existence. *Behagen v. Amateur Basketball Assn.*, 744 F.2d 731, 733 (10th Cir. 1984). Faced with a motion challenging the existence of personal jurisdiction, the court may elect to conduct an evidentiary hearing and conclusively resolve the question; alternatively, the court may elect to resolve the matter on the strength of affidavits and other written materials, deferring the conclusive resolution of the jurisdictional question to the time of trial. If the court resolves the matter on written submissions, it requires the plaintiff to make only a *prima facie* showing of personal jurisdiction now. *Niemi v. Lasshofer*, 770 F.3d 1331, 1347 (10th Cir. 2014). If the court requires only a *prima facie* showing, it takes any well-pled facts alleged in the Complaint as true and construes any factual disputes in the parties' affidavits

in favor of the plaintiff. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

For purposes of personal jurisdiction, the court conducts two inquiries. First, it ascertains whether it has "general jurisdiction" over a defendant, such that the court can hear <u>any</u> controversy involving that defendant. The "paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Bristol-Meyers Squibb Co. v. Superior Court of California*, 137 S.Ct. 1773, 1780 (2017). Except in exceptional cases (where the corporation is "so heavily engaged in activity" in the forum state as to render it "essentially at home" there), the fora in which general jurisdiction over a corporate defendant can be exercised are those where the entity is incorporated or where it maintains its principal place of business. *BNSF Ry. Co. v. Tyrell,* 137 S.Ct 1549, 1558 (2017).

Here, the parties agree that Craftworks was incorporated in Delaware. But they disagree as to the location of Craftworks' principal place of business. It is undisputed that, at the time of the operative events in Mr. Vega's Complaint, Craftworks' principal place of business was in Broomfield, Colorado. But Craftworks asserts that, effective November 1, 2018, it merged with another entity and relocated its corporate headquarters to Nashville, Tennessee. The parties have significant factual disputes as to whether and when Craftworks moved its headquarters from Colorado to Tennessee – Mr. Vega points out that various governmental registries in both Colorado and Tennessee currently report Craftworks' headquarters as being in Colorado, among other things.

The Court need not resolve these disputes. Craftworks assumes but cites no authority for the proposition that the jurisdictional question is determined based on the citizenship of a

defendant at the precise moment that a case is commenced. That contention does not appear to be correct. Instead, the temporal focus is when the alleged events occurred. For example, in *Delphix Corp. v. Embarcadero Technologies, Inc.*, 749 Fed.Appx. 502, 505-06 (9th Cir. 2018), the defendant in 2012 while headquartered in California allegedly began infringing on the plaintiff's trademark. The plaintiff commenced suit in California in February 2016. Claiming that it had merged with another entity and moved its office headquarters to Texas in or about October 2015, and thus was no longer "at home" in California, the defendant moved to dismiss the claims against it for lack of personal jurisdiction in California. The trial court agreed but the 9th Circuit reversed. It explained that "courts must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have jurisdiction" and that "one cannot defeat personal jurisdiction by a move away from the state in which the underlying events took place." Suggesting that "a general jurisdiction inquiry should consider all of a defendants contacts with the forum state prior to the filing of the lawsuit," the court found that the defendant had been located in California for two decades before the suit was filed and that the recently move of its headquarters "did not instantaneously dissolve the general jurisdictional nexus [the defendant] had established by its continuous and systematic operations in California." *Id.*

A fair reading of *Delphix* is that jurisdiction is assessed based on a lengthy look back at the defendant's presence in the forum state, not just on the defendant's citizenship at the moment the case was commenced. Alternatively, one might, as does *Chee Vang v. State Farm Mut. Auto Ins. Co.*, 2019 WL 1676150 at *3 (D.Ariz. Apr. 17, 2019), read *Delphix* as applying the "exceptional case" caveat of *Daimler AG v. Bauman*, 517 U.S. 117, 139 n .19 (2014), which posits that in certain exceptional circumstances, "a corporation's operations in a forum other than

4

its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that state" as well. Either reading suffices to resolve Craftworks' jurisdictional challenge here. It is clear that Craftworks had its principal place of business in Colorado when the events alleged by Mr. Vega occurred. Craftworks departed Colorado only three months before Mr. Vega commenced suit in Colorado. In these circumstances, this Court finds the analysis of *Delphix* persuasive and that application of that analysis here yields the same result: a conclusion that Craftworks remains subject to general personal jurisdiction in Colorado, notwithstanding the recent move of its headquarters. Accordingly, the Court denies Craftworks' motion to dismiss for lack of personal jurisdiction.

**B. Venue**

28 U.S.C. § 1391 establishes the appropriate venue for suits brought in federal court. As pertinent here, the appropriate venue for this action is: (i) any judicial district where the defendant resides (if the defendant resides in the forum state), or (ii) any judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred."[1] 28 U.S.C. § 1391(b)(1), (2). For purposes of venue based on a defendant's residency, the 10th Circuit "will deem a corporate defendant to be a 'resident' [of a district] for purposes of § 1391(a)(1) when the defendant is subject to personal jurisdiction at the time the action is commenced." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 n. 10 (10th Cir. 2010), *citing* 28 U.S.C. § 1391(c)(2) (an entity "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction"). Because the Court has previously determined that Craftworks is subject to personal jurisdiction in Colorado because its principal

---

[1] Mr. Vega assumes that 28 U.S.C. § 1391(b)(1) would provide proper venue in Colorado because Craftworks "resides" in Colorado.

place of business was in Colorado during the events alleged, the Court similarly finds that Craftworks is also a resident of Colorado for purposes of the venue statute. Thus, the Court need not reach the question of whether a substantial part of the events occurred in Colorado, and Craftworks' motion to dismiss for improper venue is denied.

**C. Transfer**

28 U.S.C. § 1404(a) provides that "for the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought." Craftworks argues that the Court should transfer this case to the Eastern District of Louisiana, where Mr. Vega resides. There is no genuine dispute between the parties that such district is one in which this action might have been brought, as a substantial portion of the pertinent events occurred there. 28 U.S.C. § 1391(b)(2). Although neither party has specifically addressed the issue, the Court also considers whether a transfer of this action to the Middle District of Tennessee is an appropriate venue given that Craftworks is, by its own contention, a resident of that district. 28 U.S.C. § 1391(b)(1).

In determining whether to transfer an action under § 1404, the Court considers the following factors: (i) the plaintiff's choice of forum; (ii) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure the attendance of witnesses; (iii) the cost of making the necessary proof; (iv) questions as to the enforceability of a judgment if one is obtained; (v) the relative advantages and obstacles to a fair trial in each jurisdiction; (vi) difficulties that may arise from congested dockets; (vii) the possibility of the existence of questions arising in the area of conflict of laws; (viii) the advantage of having a local court determine questions of local law; and (ix) all other considerations of a practice nature that make a trial easy, expeditious, and economical. *Bartile Roofs*, 618 F.3d at 1167, *citing*

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.3d 1509, 1516 (10th Cir. 1991). The party moving for transfer bears the burden of showing that the existing forum is inconvenient and must demonstrate something more than simply shifting the inconvenience from one side to another. *Scheidt v. Klein*, 956 F.2d 963, 965-66 (10th Cir. 1992). This Court considers each factor in turn.

1. <u>Mr. Vega's choice of forum</u>

Typically, the plaintiff's choice of forum is given substantial weight and will require a strong showing by the movant to overcome. *Bartile Roofs*, 618 F.3d at 1167 & n. 13. However, the plaintiff's choice of forum is given less weight if the plaintiff is not a resident of the chosen forum or where the facts giving rise to the lawsuit have no significant connection to the chosen forum. *Id.* at 1168. *Bartile* seems to suggest that these two criteria are evaluated in the conjunctive – that less weight is given to the plaintiff's choice of forum only if <u>both</u> criteria are absent. In *Bartile*, the 10th Circuit acknowledged that the plaintiff corporation was not a resident of its chosen forum state, Wyoming, but it found that the choice of forum factor nevertheless "weighs against transferring the action" because "the facts giving rise to the lawsuit have a material relation or significant connection to Wyoming." 618 F.3d at 1168.

Mr. Vega is a resident of Louisiana, not Colorado. It can hardly be denied that the primary events significant to his claim arose in Louisiana. That is where he was employed, where he was paid, and where he performed work that was either FLSA-exempt or non-exempt. Mr. Vega argues that there is nevertheless a significant connection to Colorado in this action because corporate decisions concerning the FLSA status of GBB Assistant Managers were made at Craftworks' corporate level during the time that Craftworks was located in Colorado. Mr. Vega has not produced an affidavit or other evidence that supports the contention that these decisions were made in Colorado. Rather, he points to the affidavit of Lori Fulmer, Craftworks'

7

President of Human Resources, tendered in support of Craftworks' motion. Ms. Fulmer's affidavit states that "those responsible for formulating and administering CraftWorks' pay policies and practices work at its headquarters in Nashville, Tennessee" and that Craftworks' "wage and hour policies relating to the putative collective are developed and maintained by personnel located in Nashville, Tennessee." Mr. Vega seems to suggest that, before the relocation of Craftworks' headquarters to Tennessee, those decisions would necessarily have been made in Colorado instead, but that inference is not necessarily one that can be drawn from Ms. Fulmer's affidavit alone.

Moreover, Mr. Vega's theory of this case – that the need for GBB Assistant Managers to perform non-exempt work resulted from inadequately-funded labor budgets, which were necessarily created by Craftworks officials in Colorado – relies on a chain of inferences that are not yet supported by any evidence in the record. The Court can give due regard to factual allegations in the Complaint that are clearly within the personal knowledge of Mr. Vega (*i.e.* that he was asked to perform substantial amounts of non-exempt work), but it is less clear that Mr. Vega has personal knowledge about the actual labor budget for his GBB location, the degree to which that budget was or was not sufficient to adequately staff the location, and the source of budget decisions (*e.g.* whether budget decisions might have been made on a local or regional level, rather than by Craftworks' corporate officials in Colorado). Because it is not necessarily clear to the Court that a substantial portion of the operative events occurred in Colorado, the Court gives Mr. Vega's choice of forum only some, not substantial, weight. Nevertheless, this factor tips against transfer.

2. <u>Access to proof</u>

In considering this factor, the Court gives primary weight to the convenience of witnesses. *Bartile Roofs*, 618 F.3d at 1169. Because Craftworks bears the burden of proof on the motion to transfer, it is obligated to identify the pertinent witnesses and their locations, to indicate the quality of materiality of their testimony, and to show that their testimony could not be effectively secured at trial, via deposition, or through other forms of compulsory process. *Id.* Here, Craftworks argues that the pertinent witnesses are limited to staff and management employees at the GBB location in New Orleans where Mr. Vega worked. In the abstract, as to these employees, Craftworks makes a compelling argument that such witnesses would be inconvenienced by having to testify at hearings or trials in Colorado, rather than Louisiana, and that some of those employees might be beyond this Court's ability to compel attendance.

Craftworks has not addressed the possibility that its own current or former officials might have pertinent evidence to give as well. Ms. Fulmer's affidavit appears to concede that present Craftworks officials in Tennessee might have knowledge pertinent to the case. It appears that Craftworks continues to maintain significant management operations in Colorado as well, suggesting that percipient witnesses can also be found there. In addition, some of the management-level employees in Louisiana that Craftworks identifies are likely under Craftworks' control, suggesting that Craftworks can direct those witnesses to appear wherever the presiding court demands. Locating the trial in Colorado, Tennessee, or Louisiana will necessarily inconvenience those witnesses who reside in any other location. But the Court is confident that counsel in this action can ease the burdens on witnesses by counsel traveling to the witnesses' locations in order to conduct depositions. Craftworks' Colorado-based counsel certainly cannot complain about the inconvenience of having to travel to Louisiana to depose Mr. Vega and any of his co-worker witnesses, given that Craftworks' counsel is specifically

encouraging the Court to transfer this action to Louisiana, nor can they complain of having to travel to Tennessee to depose officials of their own client. And Mr. Vega's counsel, who hail variously from New York, Washington D.C., Georgia, and Illinois, will have to travel to depositions regardless of whether the case is heard in Colorado, Louisiana, or Tennessee.

Ultimately, this factor boils down to the question of which location is best able to compel the attendance of reluctant witnesses. In that regard, the record is incomplete. Certainly, current Craftworks officials and managers under its control can be produced at Craftworks' demand, regardless of where they are located. *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 203 (D.Del. 1998) ("Party witnesses or witnesses who are employed by a party carry no weight in the 'balance of convenience' analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial"). But to the extent that Mr. Vega's former co-workers are percipient witnesses with relevant knowledge, it may be difficult for this Court to compel such testimony if the witness still resides in Louisiana. Arguably, however, if a former employee now resides outside of Louisiana, it may be difficult for a court located there to compel such testimony. Because Craftworks has not specifically identified any former employee witnesses, this issue may be hypothetical at this stage. And there is some evidence in the record that there are former Craftworks officials, still residing in Colorado, who might also be percipient witnesses to policy decisions or other relevant events during their employ. Those witnesses would be within the subpoena power of this Court, but not within the power of a court in Louisiana.

Because Craftworks bears the burden of proof on the motion to transfer, and because Craftworks has only addressed this factor at a general level, the Court finds that this factor tips, but only slightly, in favor of a transfer to Louisiana.

10

### 3. Remaining factors

Most of the remaining factors are either in equipoise – *e.g.* judgments are equally enforceable in any of the potential jurisdictions, there are no questions of local law to be determined – or are of minimal significance in the analysis (*e.g.* the cost of electronically-producing documents from Craftworks' headquarters in Tennessee or from its offices in Colorado are largely the same regardless of where the case is heard, the dockets of the courts in Colorado and Louisiana are roughly comparable).[2]

Craftworks suggests that Louisiana has a greater interested in resolving this lawsuit because it is where Mr. Vega resides, but this Court notes that Colorado and Tennessee have an equally-compelling interest in ensuring that employers in their states are complying with their obligations under the FLSA. Thus, these factors contribute little to the analysis.

---

[2] The Court largely ignores an argument by Craftworks that Mr. Vega is pursing his claims in Colorado out of fear that courts in Louisiana would apply local precedent that might narrow his ability to form a nationwide collective. Although that argument was fully within Craftworks' knowledge at the time it filed its motion, it elected to raise the argument for the first time in its reply brief, thereby depriving this Court of a fully-briefed discussion of the issue. In any event, the existence and contours of any putative collective are not before the Court at this time and the Court declines to decide questions of transfer based on arguments that <u>might</u> be made or rulings that <u>might</u> be issued in the future.

However, the Court does note with interest the fact that Mr. Vega has already filed an opt-in notice in another FLSA overtime action against Craftworks that is currently pending in the United States District Court for the District of Columbia. Although proceedings in that case have stalled because the named plaintiff has been compelled to arbitrate, Mr. Vega's filing of an opt-in notice makes him a co-plaintiff whose rights are subject to determination in that action regardless of the named plaintiff's claims. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 73 (2013) (indicating that a putative FLSA collective action might become moot if the named plaintiff's claims are resolved "in the absence of any claimant's opting in," implying that once an opt-in has occurred, the parties opting in may continue the action after the named plaintiff's claims are resolved). This means that there are two lawsuits in which Mr. Vega asserts his claims. It is neither a good use of judicial nor party resources for both to proceed simultaneously. Therefore, within 14 days of this Order, Mr. Vega shall file a notice, in both the District of Columbia case and this action, withdrawing his opt-in notice in the District of Columbia action. If Mr. Vega fails to do so, the Court will stay this case pending resolution of Mr. Vega's claims in the District of Columbia case.

Taken as a whole, then, the Court finds that Craftworks has not carried its burden of demonstrating that a transfer of this action is warranted. Although Craftworks is correct that some uncertain number of Louisiana witnesses will be inconvenienced in having to give testimony in a suit pending in Colorado, the mild weight of that mostly-uncertain factor does not decisively overcome the mild weight assigned to Mr. Vega's interest in litigating in his chosen forum. Ultimately, this Court finds that, at most, Craftworks has demonstrated that a transfer of this case to Louisiana would largely serve only to shift the inconvenience from one side to another, not to substantially reduce the burdens of litigation as a whole. *Scheidt,* 956 F.2d at 966. Accordingly, Craftworks' motion to transfer is denied.

## **CONCLUSION**

For the foregoing reasons, Craftworks' Motion to Dismiss, or in the alternative, to Transfer **(# 22)** is **DENIED**. In addition, within 14 days of this Order, Mr. Vega shall file a

notice, in both the District of Columbia case and this action, withdrawing his opt-in notice in the District of Columbia action, failing which, the Court will stay this case pending resolution of Mr. Vega's claims in the District of Columbia case.

Dated this 18th day of December, 2019.

BY THE COURT:

*/s/ Marcia S. Krieger*

Marcia S. Krieger
United States District Judge